# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ARIF UGUR,<br><br>    Defendant. | Criminal Number: 21-cr-10221-NMG |

## DEFENDANT ARIF UGUR'S SENTENCING MEMORANDUM

Defendant Arif Ugur submits this memorandum with respect to the application of 18 U.S.C. § 3553(a) to the facts and circumstances of his offense.  The parties have entered into a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C).  If the Court accepts the plea agreement, the incarceration range would be 24 to 36 months.  For the reasons reflected in the memorandum and to be discussed at the sentencing hearing, Mr. Ugur respectfully submits that a sentence of 24 months in prison, followed by 24 months of supervised release, no fine,[1] and a $500 special assessment is sufficient but not greater than necessary to achieve the purposes of sentencing.  *See* 18 U.S.C. § 3553(a).

## I.    Introduction

Mr. Ugur is a 53-year-old Turkish citizen who has agreed to a voluntary order of departure back to Turkey.  He first came to the United States for his studies and has spent a large amount of his adult life living here.  He has one adult son who also studied in the US, but who now lives in Italy.

---

[1] Mr. Ugur agreed to pay a $10,000 fine "***unless the Court finds that [he] is not able, and is not likely to become able, to pay a fine***."  *See* Plea Agreement at 3.  As discussed below, Mr. Ugur is not able and is not likely to become able to pay a fine.  Therefore, he requests that this Court not impose a fine.

He accepts responsibility for his crimes and recognizes the seriousness of his actions, although it was never his intention to harm the United States. He now understands the cost and potential damage that his crimes have caused. He hopes that his guilty plea and agreement to be deported show the Court and the government that he sincerely regrets what he did.

## II.  The Proposed Sentence of 24 Months in Prison, 24 Months of Supervised Release, No Fine, and a $500 Special Assessment Is Sufficient but Not Greater than Necessary Under § 3553(a)

A sentence of 24 months in prison, 24 months of supervised release, no fine, and a $500 special assessment is sufficient but not greater than necessary to achieve the varied goals of 18 U.S.C. § 3553(a).

### 1.  The Nature and Circumstances of the Offense and History and Characteristics of the Defendant

#### A.  The History and Characteristics of the Defendant

Mr. Ugur was born in Turkey in 1969 to Ali Ugur and Sirin Ugur. Revised Presentence Investigation Report ("PSR") at ¶ 68. He was raised with four siblings and had a middle-class upbringing. *Id.* His father, Ali, was a government employee. *Id.* at ¶ 70. His mother, Sirin, was a nurse. *Id.* at ¶ 71.

In 1994, Mr. Ugur graduated from Ankara University in Turkey. *Id.* at ¶ 83. He obtained a bachelor's degree in management. *Id.* He also completed his mandatory 12-month military service in Turkey. *Id.* at ¶ 85.

In 1996, Mr. Ugur married Aylin Dogan, a U.S. citizen who lived in Turkey. *Id.* at ¶ 73. Together, they have one child, a son who is a U.S. citizen. *Id.*

In 2001, Mr. Ugur came to the United States for the first time to study at Boston University. *Id.* at ¶¶ 69, 83. He completed his master's degree in financial economics in 2003. *Id.* at ¶ 83. He resided in Massachusetts but went back and forth to Turkey frequently. *Id.* at ¶

2

69.  Eventually he became a legal permanent resident, but not a citizen, of the United States, residing in Massachusetts.  *Id.*

Mr. Ugur has worked as a financial reporter and author in Turkey.  *Id.* at ¶ 83.  He authored a recurring financial column and wrote about six books on financial topics.  *Id.*  Mr. Ugur also worked as an auditor for the Turkish Securities and Exchange Commission and as a financial consultant.  *Id.* at ¶¶ 83, 87

Mr. Ugur and his wife divorced in 2012.  *Id.* at ¶ 73.  His son attended college in the United States and then moved to Italy for work.  *Id.*

Mr. Ugur was residing in Turkey with his girlfriend, Ozden Ozdemir, at the time of his arrest.  *Id.* at ¶ 75.  He was arrested on June 22, 2021 when he entered the United States.  *Id.* at ¶ 1.

Since his arrest and detention, Mr. Ugur has taken numerous correspondence courses in order to make the most of his time in prison.  *Id.* at ¶ 79.  He has earned the following certificates during the course of his studies:

- Adjustment to Incarceration Certificate (May 2022)

- Book Club Certificates (multiple)

- Living with Others Certificate (May 2022)

- Orthodox Christian Catechism Course Certificate (June 2022)

- Preaching of the Apostle's Correspondence Course Certificate (May 2022)

- Rational Thinking Certificate (April 2022)

- Seeker of Truth Correspondence Course Certificate (April 2022)

*Id.* at ¶ 79.

Mr. Ugur does not have any history of violence or substance use or abuse.  *Id.* at ¶¶ 80-82.  He has no prior criminal history.  *Id.* at ¶¶ 60-66.

Mr. Ugur does not have the means to pay a fine of any amount.  He has been imprisoned at the Wyatt Detention Facility since his arrest on June 22, 2021.  *Id.* at ¶¶ 1, 4.  While imprisoned, he has had no income.  *Id.* at ¶ 90.  His only assets are $100 in his checking account and a share of ownership, with his siblings, in his parents' home in Turkey.  *Id.* at ¶ 89.  Moreover, he has four accounts in collection for a total of $9,453 in debt.  *Id.*

B.    <u>The Nature and Circumstances of the Offense</u>

Mr. Ugur has pleaded guilty to counts one through five of the indictment: (1) Conspiracy to Illegally Export Defense Articles, 18 U.S.C. § 371, 22 U.S.C. § 2778, 22 C.F.R. §§ 121.1, 123.1, 127.1; (2) – (3) Illegal Export of Defense Articles, 22 U.S.C. § 2778, 22 C.F.R. §§ 121.1, 123.1, 127.1; and (4) – (5) Wire Fraud, 18 U.S.C. § 1343

In 2015, Mr. Ugur founded the Anatolia Group Limited Partnership ("Anatolia"), a manufacturing company.  PSR at ¶ 9.  Between July 2015 and November 2016, Anatolia bid on and won several contracts to manufacture parts for the U.S. Department of Defense.  *Id.* at ¶ 12. These contracts were subject to the Arms Control Act, 22 U.S.C. § 2751, which requires manufacturers who make goods for the Department of Defense to make those goods in the United States and also prohibits the manufacturers from sending technical specifications for those goods abroad without specific permission.  *Id.* at ¶ 18.  When bidding on the contracts, Anatolia told the government that it was going to manufacture products wholly in the U.S.  *Id.* But once Anatolia secured the contracts, Mr. Ugur sent his password to access the manufacturing specifications to Aypik Defense Systems ("Aypik"), a manufacturing company based in Turkey,

which then made the products according to those specifications and sent them back to the US. *Id.* at ¶¶ 11, 20-23.

Anatolia, at Mr. Ugur's direction, sent Aypik its password for accessing the specifications for two products that Anatolia was supposed to manufacture: Groove Pulleys, and Valve Locking Devices. *Id.* at ¶¶ 19-23, 28, 40. Aypik manufactured Groove Pulleys and another product, Bracket Assemblies, abroad and sent those products to Anatolia, which delivered them to the Department of Defense. *Id.* at ¶¶ 30, 37. The Department of Defense only paid Anatolia for the Groove Pulleys; the Bracket Assemblies did not conform to the Department of Defense's specifications. *Id.* Mr. Ugur received approximately $186,000 in payments from the Department of Defense pursuant to the products manufactured in fulfilment of these contracts. *Id.* at ¶ 12.

### 2.    Just Punishment and Deterrence

A sentence of 24 months in prison, 24 months of supervised release, no fine, and a $500 special assessment is a severe sentence that will deter both Mr. Ugur and others from committing similar offenses in the future.

As stated above, Mr. Ugur has no prior criminal history and will be deported to Turkey as soon as his period of incarceration is complete. He understands that, even though his actions did not compromise national security, they were fraudulent and against the law. He further acknowledges that, as articulated in the Defense Logistics Agency's ("DLA") victim impact statement, this offense and others like it cost the DLA valuable time and money.

### 3.    The Kinds of Sentences Available and the Sentencing Guidelines

Mr. Ugur, the government, and the Probation Officer all agree on the sentencing guidelines calculation. The sentencing guidelines state that all counts in the complaint should be

grouped because they involve the same victim and are part of the same scheme.  *See* USSG §
3D1.2.  The most serious charge in the group is the charge for counts 1 through 3, Conspiracy to
Violate the Arms Export Control Act, 22 U.S.C. § 2778.  The base offense level for Conspiracy
to Violate the Arms Export Control Act is 26.  *See* USSG § 2M5.2.  Mr. Ugur has no
enhancements and his offense level is decreased by 2 points for acceptance of responsibility and
another point for accepting responsibility in a timely fashion.  *See* USSG §§ 3E1.1(a); 3E1.1(b).
Therefore, his total offense level is 23.  Because Mr. Ugur has no criminal history, his criminal
history category is I.  The sentencing guidelines range for imprisonment of a defendant with a
total offense level of 23 and a criminal history category of I is 46-57 months in prison.  The
sentencing guidelines range for supervised release of a defendant convicted of 22 U.S.C. § 2778
is 12-36 months.  *See* 18 U.S.C. § 3583(b)(2); USSG § 5D1.2.

Mr. Ugur and the government have entered into a binding plea agreement
recommendation of 24-36 months imprisonment, 24 months of supervised release, no fine, and a
$500 special assessment.  Twenty four months in prison is sufficient to punish Mr. Ugur for his
crimes and deter individuals from committing the same crimes in the future.  He fully admits and
appreciates the severity of his crimes, but notes that national security was not compromised.

Finally, Mr. Ugur has agreed to be deported following his period of incarceration.
Despite the parties' efforts to determine how long Mr. Ugur will be in custody after he completes
his sentence but before he is deported, it is unknown.  But agreeing to an order of deportation
will reduce the cost to the American taxpayer and legal system, and facilitate his deportation.

## III.   Conclusion

For the aforementioned reasons, Mr. Ugur respectfully requests that this Court sentence

him to a sentence of 24 months in prison, 24 months of supervised release, a no fine, and a $500

special assessment.

Respectfully submitted,

*/s/ George W. Vien*
George W. Vien (BBO # 547411)
David Kete (BBO # 690415)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880
gwv@dcglaw.com
djk@dcglaw.com

*Counsel for Arif Ugur*

Dated: December 9, 2022

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF),
on December 9, 2022.

*/s/ David Kete*
David Kete